**First National Bank & Trust Co. of
Waynesboro v. E. R. Squibb & Sons, Inc.**

*Richard H. Wix,* for plaintiff.
*Charles E. Wasilefski and Dennis J. Bonetti,* for defendant Daniel M. Levin, M.D.

DOWLING, *J.,* October 7, 1985—Needlessly before us is plaintiff's motion to compel discovery from

defendant Daniel M. Levin, M.D., in a medical-malpractice action. The doctor, one of four defendants in the case, heeded the advice of his counsel and refused to answer 21 questions while being deposed by plaintiff's attorney.

The ground for most of the objections was that the question asked for an opinion. Dr. Levin's lawyer stated during the deposition: "I am not allowing him to answer an opinion. We are going to refuse all opinion questions other than his diagnosis and treatment. I think he is a factual witness. He is not here as your expert to testify as to opinion."

As this and other courts have clearly ruled, such objections during discovery are wholly unfounded. We will order the doctor to answer all the questions, and we wish to express our concern that parties still are forced to bring motions to compel involving this issue.

Before addressing the matter in more detail we will review the alleged facts, although they are sketchy since a complaint has not yet been filed.

Plaintiff's decedent, Mary Ann Elden, went to the Polyclinic Hospital in Harrisburg on November 11, 1982, to have an outpatient CT scan performed. About 10 minutes after the procedure began, Ms. Elden developed pain and swelling in the area of her right shoulder and neck so the radiologist conducting the CT scan took her to the emergency room. There defendant Levin assumed responsibility for her care since Ms. Elden was a patient of the medical group of which Dr. Levin was a member.

After attending to plaintiff's decedent for nearly two hours in the emergency room, Dr. Levin admitted her to the hospital at about 5:00 p.m. with a diagnosis of having a reaction to an injection of the dye used in the CT scan. During the evening of November 11, marked changed occurred in the pa-

tient's condition and she was treated by medical residents of defendant Polyclinic.

It appears that no effort was made to contact Dr. Levin overnight about the changing condition of his patient. When the doctor arrived at the hospital, about 6:00 a.m. November 12, Ms. Elden had been undergoing resuscitation efforts for about an hour. She was pronounced dead shortly therafter.

Set forth in the attached appendix are the 21 questions which plaintiff is seeking to have answered.[1] Even though defense counsel took the staunch position during the deposition that most of these questions were improper because they asked for an opinion, counsel's brief attempts to raise different objections. The doctor primarily argues now the questions either call for speculation on the part of defendant Levin or else were already asked and answered. We disagree with · all of the stated objections.

We have addressed the issue of parties being asked opinion questions during discovery twice in recent years. It should be clear from Bolton v. Sanderson, 105 Dauphin 40 (1984), and Good v. Raeuchle (slip opinion filed May 2, 1983) that an objection on that ground is legally improper. As we stated in Bolton:

"Defendant's contention that this would be compelling a doctor in a malpractice action to give expert testimony against himself is without merit. A physician who is a defendant in a medical-malpractice action can be required to give expert testimony. Defendant's reliance on Williams v. South Hills

---

1. The motion to compel listed 22 allegedly unanswered questions but plaintiff's counsel, in his brief, withdrew one question from the list after determining that it had been answered.

Health System, 24 D.&C.3d 206 (1981), is misplaced. In Williams, the court held that a physician who had no connection to a case either as a party or as an expert retained by a party could not be compelled to give expert testimony at his deposition. There is an obvious difference between the scope of discovery permitted from a defendant physician and one who is not a party to the action." 105 Dauphin at 50.

Dr. Levin here also attempts to rely on Williams v. South Hills Health System, supra, plus three federal district court decisions. We already distinguished the South Hills case in our Bolton ruling, and the federal opinions actually support our holding. In Rodrigues v. Hrinda, 56 F.R.D. 11, 13 (W.D., Pa. 1972), the court noted that:

"In the early days of the discovery rules, it appears that certain courts engrafted an exception onto the rules which was not there and forbade inquiry into a witness' opinions or conclusions or contentions. (Citation omitted.) We believe that the better reasoning is that where the witness is an individual party or the officer of a corporation in charge of the operation or transaction which plaintiff claims injured him, discovery may be sought as to the witness' knowledge as to why things happened." Davis v. Lower Bucks Hospital, 56 F.R.D. 21 (E.D., Pa. 1972), and Williams v. Thomas Jefferson Hospital, 54 F.R.D. 615 (E.D., Pa. 1972), placed limitations on the discovery of opinions, but both unequivocally held that a plaintiff has a right to depose a doctor-defendant as to facts he knows *and* the opinions he holds.

We are mindful of the limitations, as enunciated in Davis and Williams, supra, on the discovery of opinions. That is, the information sought must pertain to matters within the doctor's area of expertise;

hypothetical questions must be based upon facts of record; the opinion question must be based upon a complete statement of all relevant facts; and the question should not be so broad as to elicit a medical treatise. However, after reading Dr. Levin's entire deposition and studying the unanswered questions in context, we are satisfied that none of the inquiries exceeded these limitations.

Turning to the specific questions at issue, we note that nos. 4, 5, 6, 7, 8, 10, 11, 12, 16 and 21 of appendix directly seek the doctor's opinion, and nos. 3, 9, 13 and 14 can fairly be read as asking for his opinion. All of the questions relate specifically to the treatment of Dr. Levin's patient, who entered the hopsital in apparent good health for an outpatient procedure and, within about a half a day, died.

This rather incongruous result quite expectedly led to the thorough and probing questioning of the patient's physician during his deposition. While it is true, as defendant asserts, that Dr. Levin was not present for the treatment of Ms. Elden from about 5:00 p.m. on November 11 until 6:00 a.m. on November 12, he countersigned many of the orders given overnight by staff residents of the hospital. He certainly can be asked whether he has opinions concerning the actions or inactions taken in his absence. In this regard we note that five of the unanswered questions (nos. 4, 7, 10, 11 and 12) merely ask whether the doctor has an opinion, not what the opinion is. It may well be that defendant has no opinion on a certain matter, but for his counsel to object — as Dr. Levin's emphatically did at the deposition (see p. 1, infra) — on the ground that the doctor is only a fact witness, is indefensible and will not be tolerated by this court.

Defense counsel argues, apparently as an alternative to the opinion-based objection, that the opinion

questions were argumentative, speculative or already asked-and-answered. We find no merit in these contentions. The deposition transcript indicates Dr. Levin was evasive in response to many questions and plaintiff's attorney resorted to followup questions in an obvious attempt to clairify a previous answer or to narrow the inquiry. Counsel is fully entitled to do this.

As for the remaining (non-opinion) questions — nos. 1, 2, 15, 17, 18, 19 and 20 — defendant primarily raises the same objections, i.e., argumentative, speculative or already asked and answered. Again, however, we believe the questions must be viewed in context with other questions and in this light we find that nos. 2, 17, 18, 19 and 20 were proper follow-up questions.

Different objections are raised against nos. 1 and 15. Dr. Levin claims no. 1 is too broad and would require a medical treatise to answer. That is absurd. The question requires nothing more than a simple "yes" or "no" answer. Finally, the doctor argues that no. 15 is improper because it is immune from disovery pursuant to section 4 of the Peer Review Protection Act.[2] This contention misconstrues the act, for the question does not request information which may be privileged; rather it merely asked whether Dr. Levin had discussed Ms. Elden's treatment with anyone other than his attorney and a certain doctor. We believe plaintiff's counsel is entitled to this "yes" or "no" answer and, further, if the answer is "yes," he is entitled to know with whom it was discussed. See Bolton v. Sanderson, supra, 105 Dauphin at 46-47.

---

2. Act of July 20, 1974, P.L. 564, 63 P.S. §425.1 et seq. (Purdon Supp. 1985).

Having determined that the unanswered questions were proper does not dispose of the matter before us. Dr. Levin would have us dismiss the motion to compel for failure of plaintiff's counsel to comply with Rule 5A.2(a)(5) of the rules of Dauphin County, which provides that the motion must contain, inter alia, "a statement of the parties' attempt to resolve the dispute."

The rule does not, however, require a futile act. During the doctor's deposition, plaintiff's counsel was almost continuously blocked by objections from three opposing defense lawyers. The tenor of the deposition is fairly represented by the following exchange on pages 102-103 of the 152-page transcript:

"Q (by plaintiff's counsel): I'm not asking you what your opinion is. Just yes or no. Do you have an opinion at this point in time as to what was the cause of the fluid that was indicated in the chest x-ray of Miss Elden?

"Defense attorney no. 1: Objection. Don't answer the question.

"Q (by plaintiff's counsel): Doctor, you've indicated there was a change in the x-rays. Would you consider the change, that is, the finding of this fluid in connection with her other condition at that point in time to be a significant change?

"Defense attorney no. 2: Again, significant is a very vague term, and I'm going to object to the form of the question.

"Defense attorney no. 1: I'm not going to let him answer the question. He didn't see the patient at that time, and I think he would be speculating at this point.

"Q (by plaintiff's counsel) Doctor, was the finding of fluid in her lungs as found by that x-ray — is

that something that you feel that you should have been notified of by someone from the hospital?

"Defense attorney no. 3: I want to object to that.
"Plaintiff's counsel: Why not."

It was made infinitely clear — albeit improperly so — by Dr. Levin's lawyer that his client would not be allowed to answer opinion questions. We cannot imagine that it would have been particularly enlightening for plaintiff's counsel to ask the doctor's attorney, after the deposition and before the filing of the instant motion, if he had changed his mind. Therefore, the motion to compel will be granted and the doctor will be ordered to resubmit to deposition, notwithstanding a technical violation of Rule 5A.2(a)(5).

Further, the second phase of the deposition will not be limited, as Dr. Levin requests, to the 21 previously unanswered questions. Obviously, the necessity of additional questions will depend on the answers given to the questions to be re-asked. Plaintiff's counsel shall be free to ask any relevant follow-up questions which reasonably flow from the answers received from his initial questions.

There also is the issue of when plaintiff must file the complaint in this action. It seems that prior to the present dispute Dr. Levin's counsel attempted to cause plaintiff to file a complaint before depositions were taken. In response to plaintiff's request for a protective order, the Honorable Herbert A. Schaffner directed that the doctor submit to deposition and that plaintiff's complaint would be due 20 days after receipt of Dr. Levin's deposition transcript.

Defendant now contends there should not be an extension of that deadline — meaning, in effect,

that the complaint is more than two months overdue at this point. This is ridiculous. Clearly, the basis of Judge Schaffner's order was that plaintiff would have the complete transcript of the deposition of Dr. Levin in order to prepare its complaint. Regardless what information is produced at the doctor's resumed deposition, plaintiff's counsel is entitled to a complete transcript before filing its complaint. Hence, we will extend Judge Schaffner's order to allow plaintiff 20 days to file after receipt of the full deposition transcript.

One final matter. Plaintiff's motion to compel also requested that sanctions in the form of attorney's fees be imposed against defendant Levin for his unfounded refusal to answer opinion questions. We frankly are inclined to award attorney's fees in this case, but regretfully have determined that such an order would be premature under Pa.R.C.P. 4019(g). While the federal rules provide that if a party is successful in obtaining an order of compliance the court shall at the same time award expenses including counsel fees, Pennsylvania has taken a different approach. We believe we are constrained by Rule 4019(g) to first order compliance by Dr. Levin, which we are doing. If the order is not obeyed, then plaintiff may file a new motion to impose sanctions.

Accordingly, we enter the following

## ORDER

And now, this October 7, 1985, defendant Daniel M. Levin, M.D., is ordered to submit to a further deposition, which is to proceed consistent with this opinion. It is also ordered that plaintiff shall not be required to file a complaint in ths matter until 20 days after receipt of the transcript of the completed deposition.